UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL F.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 15-cv-00879 NC<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 19 |

In this insurance case, Raquel F. alleges that United Healthcare wrongfully denied her insurance claim covering an eight month residential stay at Oliver-Pyatt, a Florida treatment center. Both parties move for summary judgment. The Court denies both motions for summary judgment because there remains a genuine dispute of material fact as to why Raquel was admitted to Oliver-Pyatt and what she was treated for at the facility.

**I.    BACKGROUND**

Raquel participated in a "partial hospitalization residential program" at Oliver-Pyatt in Florida from September 24, 2013, through May 14, 2014. Dkt. No. 19-3 at ¶¶ 3, 5 (De Leon Dec.). Raquel had a preexisting diagnosis of major depressive disorder and had been taking medication prescribed by her physician when she was admitted to Oliver-Pyatt. Dkt. No. 20-1 at ¶ 8 (Zucker Dec.). Her lithium dosage, which is her medication for major depressive disorder, was adjusted during her time at Oliver-Pyatt. *Id*.

From there, the facts are disputed. Raquel testifies that she went to Oliver-Pyatt

Case No. 15-cv-00879 NC

because she was suffering from depression, anxiety and an eating disorder. Dkt. No. 19 at 6. Raquel's treating psychiatrist at Oliver-Pyatt, Dr. McShane, testifies that Raquel's primary diagnosis on admission was major depressive disorder. McShane Dec. at ¶¶ 3-5. Dr. McShane states that Plaintiff was treated for her major depressive disorder throughout her stay at Oliver-Pyatt. *Id*. at 5, 12, 16, 18.

However, Dr. Zucker, the former medical director at UHIC, testifies that Raquel was diagnosed only with a non-specified eating disorder (EDNOS), accompanied by social anxiety and depression. Zucker Dec. at 2-3. Dr. Zucker testifies that Raquel's depression was stable on admission to Oliver-Pyatt and did not require treatment at the facility. *Id*. This testimony is based upon Dr. Zucker's review of medical records that UHIC received in support of Raquel's claims for benefits under her insurance policy. *See* Dkt. No. 20-2.

The second factual dispute regards the billing process. When Oliver-Pyatt submitted claims to UHIC for the residential services it provided to Raquel, the claims were initially coded as 30750, showing that the primary reason Raquel was in the facility was for an unspecified eating disorder. Dkt. No. 20-4 at 2 (Furguson Dec.). After those claims were denied, corrected claims were submitted to reflect that Raquel's primary diagnosis was major depression, that EDNOS was a secondary diagnosis, and that Raquel was admitted to Oliver-Pyatt for her depression, not EDNOS. Furguson Dec., Ex. 3, 4.

UHIC denied all of the claims submitted by Oliver-Pyatt on behalf of Raquel, stating that Oliver-Pyatt did not meet the policy's definition of a covered hospital. De Leon Dec., Ex. A. UHIC, however, reserved its right to deny the claims based on other policy provisions, exclusions, and limitations. *Id*.

Raquel filed suit in Santa Clara County Superior Court, and UHIC removed the action to federal court based on diversity of citizenship between the parties. Dkt. No. 1.[1]

## II.  LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and

---

[1] Both parties have consented to the jurisdiction of a magistrate judge. Dkt. No. 13 at 3.

1  resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any
2  material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014);
3  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under
4  governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty
5  Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the
6  evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*
7  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of
8  L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

### III. EVIDENTIARY OBJECTIONS AND JUDICIAL NOTICE

#### A.    Evidentiary Objection

UHIC objects to paragraphs four and five of the declaration of Vanessa De Leon Acevedo.  Dkt. No. 20 at 5 n.1.   UHIC argues that Ms. De Leon Acevedo lacks competence to testify to Raquel's health and that the paragraphs constitute hearsay.  *Id.* The Court does not rely on the disputed paragraphs in reaching its conclusion in this order.

#### B.    Judicial Notice

UHIC requests judicial notice of Exhibits 6-11 to the Declaration of Elise D. Klein (Dkt. No. 20-9), which are printouts from the internet. Dkt. No. 20 at 8 n.3. However, pursuant to Federal Rule of Evidence 201(b), the Court declines to take notice of these documents because UNIC does not provide authenticating information beyond the web

Case No. 15-cv-00879 NC                  3

1 addresses and therefore the printouts' accuracy could be disputed. *Estate of Fuller v.*
2 *Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (denying
3 judicial notice of a web page printout because "it is inappropriate for the Court to take
4 judicial notice of facts on a webpage whose source and reliability are unknown.").

**IV. DISCUSSION**

The determinate question is whether Raquel was treated for an illness that is entitled to special protection under the California Mental Health Parity Act. If Raquel's diagnosis was ENDOS, then the Parity Act does not apply. If, however, she was admitted and treated for major depressive disorder, then the protections of the Parity Act do apply.

The California Mental Health Parity Act was enacted in 1999. In enacting the statute, the California legislature found that "[m]ost private health insurance policies provide coverage for mental illness at levels far below coverage for other physical illnesses." 1999 Cal. Legis. Serv. ch. 534 (A.B. 88), § 1 (West). The legislature "further found that coverage limitations had resulted in inadequate treatment of mental illnesses, causing 'relapse and untold suffering' for people with treatable mental illnesses, as well as increases in homelessness, increases in crime, and significant demands on the state budget." *Harlick v. Blue Shield of California*, 686 F.3d 699, 711 (9th Cir. 2012).

To combat this disparity, the Parity Act provides, in pertinent part:

> (a) Every health care service plan contract issued, amended, or renewed on or after July 1, 2000, that provides hospital, medical, or surgical coverage *shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses* of a person of any age . . . under the same terms and conditions applied to other medical conditions as specified in subdivision (c).
> (b) These benefits shall include the following:
>   (1) Outpatient services.
>   (2) Inpatient hospital services.
>   (3) Partial hospital services.
>   (4) Prescription drugs, if the plan contract includes coverage for prescription drugs.
> (c) The terms and conditions applied to the benefits required by this section, that shall be applied equally to all benefits under the plan contract, shall include, but not be limited to, the following:
>   (1) Maximum lifetime benefits.
>   (2) Copayments.

>                (3) Individual and family deductibles.
>          (d) For the purposes of this section, "severe mental illnesses"
>     shall include:
>          . . . (4) Major depressive disorders.

Cal. Health & Safety Code § 1374.72 (West) (emphasis added). Subsection (a) states that all plans that come within the scope of the Act "shall provide coverage for . . . medically necessary treatment of severe mental illnesses," including major depressive disorders. Therefore, if treatment for a "severe mental illness" is "medically necessary," a plan that comes within the scope of the Act must pay for that treatment. *Harlick*, 686 F.3d at 711; *Rea v. Blue Shield of California*, 226 Cal. App. 4th 1209, 1238 (2014) (requiring an insurance policy to cover the plaintiffs' residential treatments for anorexia and bulimia because they were enumerated severe mental illnesses covered by the Parity Act).

The issue here is why Raquel was being treated at the Oliver-Pyatt facility. The parties present dueling declarations from physicians at Oliver-Pyatt regarding Raquel's diagnosis and treatment. Raquel introduces factual declarations by herself and her treating psychiatrist at Oliver-Pyatt, Dr. McShane, stating that Raquel went to Oliver-Pyatt with a diagnosis of major depressive disorder and was treated for that disorder. McShane Dec. at 3-4.

On the other hand, UHIC presents a declaration in which Dr. Zucker testifies that Raquel was treated for a non-specific eating disorder. Zucker Dec. at 2-3. UHIC argues that if indeed Raquel received treatment for her major depressive disorder, the treatment was not medically necessary. Dkt. No. 20 at 21. UHIC also argues that Oliver-Pyatt is a facility specializing in the treatment of eating disorders, and expresses its desire to depose Dr. McShane regarding whether Oliver-Pyatt was equipped to provide treatment for major depressive disorder.

The conflicting facts over the billing codes also supports denial of summary judgment. At first, Oliver-Pyatt submitted bills to UHIC stating that Raquel's diagnosis and treatment were for EDNOS, which is not covered under the Parity Act. Furguson Dec., Ex. 3. When those claims were denied, Oliver-Pyatt submitted corrected claims stating that Raquel was admitted to Oliver-Pyatt for her depression, not EDNOS. *Id*. This

1 contributes to the genuine dispute of material fact as to why Raquel was admitted to Oliver-Pyatt and what treatment she received there.

These questions create a genuine dispute of material fact that precludes summary judgment for either party.  Because it is not clear why Raquel went to Oliver-Pyatt or what she was treated for, the legal questions of whether or not the Parity Act applies cannot be answered as a matter of law.

**V.   CONCLUSION**

Because the evidence does not establish as a matter of law why Raquel was admitted at Oliver-Pyatt and what she was treated for, summary judgment for either party is not appropriate.  Therefore, the Court denies the cross-motions for summary judgment.

**IT IS SO ORDERED.**

Dated:  November 30, 2015              _____
                                      NATHANAEL M. COUSINS
                                      United States Magistrate Judge

Case No. 15-cv-00879 NC              6